UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JOHN PARATO, JR.,

                      Plaintiff,              **MEMORANDUM AND ORDER**
        -against-                          19-CV-5414 (RRM)

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY,[1]

                      Defendant.
--------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

       In a stipulation signed April 27, 2020, the parties to this Social Security appeal agreed to reverse the Commissioner of Social Security's decision denying plaintiff's claim for disability insurance benefits and to remand this matter for further administrative proceedings. After obtaining a fully favorable decision from an ALJ on remand and three days after plaintiff received a Notice of Award of past-due benefits, plaintiff moved for an order awarding attorney's fees pursuant to 42 U.S.C. § 406(b). For the reasons set forth below, the Court grants plaintiff's motion and awards plaintiff's counsel $18,760.50 in attorney's fees.

## BACKGROUND

       The following facts are undisputed. In mid-October 2015, plaintiff filed a claim for disability insurance benefits with the Social Security Administration ("SSA"), alleging that he was disabled since August 17, 2015. That claim was initially denied and plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On April 27, 2018, ALJ Seth I. Grossman found that plaintiff was not disabled and denied his claim. The Appeals Council denied

---

[1] The complaint in this action named Andrew Saul, who was then Commissioner of Social Security, as defendant. Federal Rule of Civil Procedure 25(d)(1) provides that "when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending[, … the] officer's successor is automatically substituted as a party." Since Kilolo Kijakazi is now Acting Commissioner, she is automatically substituted for Mr. Saul.

plaintiff's request for review on or about August 1, 2019, rendering the ALJ's ruling the Commissioner's "final decision" in this matter.

Thereafter, plaintiff retained a law firm – Pierre Pierre Law, P.C. ("Pierre Law") – to represent him before this Court on appeal of the Commissioner's final decision.  On September 17, 2019, plaintiff signed a Retainer Agreement with Pierre Law which provided, among other things, that if the appeal was successful and plaintiff was awarded past-due benefits by either the district court or by the SSA following remand, the law firm "may request up to twenty-five percent (25%) of past-due benefits pursuant to 42 U.S.C. § 406(b) …."  (Retainer Agreement (Doc. No. 19-1), ¶ A.)  If the appeal was unsuccessful, the law firm would receive no fee.  (*Id.*)  The agreement assigned any attorney's fees plaintiff received under the Equal Access to Justice Act ("EAJA") to Pierre Law, but provided that the law firm would refund the EAJA fees to plaintiff if the firm was awarded a greater amount under § 406(b).  (Retainer Agreement, ¶ C.)

On September 23, 2019, less than one week after entering into this agreement, Eddy Pierre Pierre, Esq., of Pierre Law commenced this action on plaintiff's behalf.  On January 7, 2020, defendant served a copy of the administrative record on plaintiff's counsel.  (1/7/2020 Letter (Doc. No. 9).)  Two days later, the parties proposed a scheduling order which gave plaintiff until March 9, 2020, to serve a motion for judgment on the pleadings and gave defendant until May 8, 2020, to serve a cross-motion.  (1/9/2020 Letter (Doc. No. 10).)  The Court promptly adopted that proposed schedule.  (1/13/2020 Scheduling Order.)

According to an affirmation submitted by Mr. Pierre in support of the instant motion (the "Pierre Affirmation"), plaintiff served his Rule 12(c) motion on defendant on March 9, 2020. (Pierre Aff. (Doc. No. 19) at ¶ 8.)  Defendant never served a cross-motion.  Rather, on April 27, 2020, defendant's counsel submitted a stipulation and proposed order, in which the parties

2

agreed to reverse the Commissioner's final decision and to remand this matter for further

administrative proceedings.   (Stipulation and Proposed Order of Remand (Doc. No. 12-1) at 1.)

On April 28, 2020, the Court "so ordered" that document and entered judgment accordingly.

On July 24, 2020, defendant's counsel submitted a second stipulation and proposed order,

in which the parties agreed to award plaintiff $5,884.82 for attorney's fees and expenses in full

satisfaction of any and all claims under the EAJA.  (Stipulation and Proposed Order Regarding

Attorney's Fees (Doc. No. 15-1) at 1.)  That document provided that the amounts would be paid

directly to plaintiff's counsel if plaintiff had agreed to transfer his rights to EAJA fees to his

attorney.  (*Id.* at 1–2.)  Since the Retainer Agreement included an assignment of these fees to

Pierre Law, the law firm received $4,382.08 in attorney's fees after the Court entered the

proposed order on July 27, 2020.  (Pierre Aff. at ¶ 11.)

On or about July 5, 2022 – more than two years after this matter was remanded – an ALJ

issued a fully favorable decision.  (Pierre Aff. at ¶ 10.)  Thereafter, the SSA mailed plaintiff a

Notice of Award, which was amended on August 28, 2022.  That amended Notice of Award, (the

"NOA"), informed plaintiff that he was entitled to past-due benefits of $75,042 and that the SSA

was withholding 25% of that amount – $18,760.50 for attorney's fees.  (NOA (Doc. No. 19-3) at

2.)  The NOA noted that the SSA would review plaintiff's case in five to seven years.  (*Id.* at 3.)

The Instant Motion

On September 1, 2022 – four days after the NOA was mailed – plaintiff filed the instant

motion, seeking $18,760.50 in attorney's fees pursuant to 42 U.S.C. § 406(b).  In support of that

motion, plaintiff submitted, among other things, an eight-page memorandum of law (the

"Memo") and the Pierre Affirmation, which attaches three exhibits:  the Retainer Agreement, the

NOA, and time records.  Those records indicate that Pierre Law's attorneys spent 29.6 hours on

this case, including at least 25.75 hours drafting and editing the motion for judgment on the pleadings. Pierre Law's paralegal also spent 6.1 hours on the litigation.

The Pierre Affirmation also provides some information regarding Mr. Pierre, one of two attorneys who worked on this case. Mr. Pierre "has been practicing Social Security Disability law almost exclusively for over twenty years" and charges $500 an hour in non-contingent-fee cases (Pierre Aff. at ¶ 3.) The affirmation contains no information on the other attorney, Martin W. Long, who, having spent 23.5 hours drafting the motion, performed most of the work on this case.

The Memo also provides some details which are not otherwise apparent from the record. First, it notes that the administrative record in this case was 719 pages long and that preparation of the motion for judgment on the pleadings "involved many hours of case law and medical research." (Memo (Doc. No. 18) at 4.) Second, it states that Pierre Law not only represented plaintiff before this Court but on remand, where the firm appeared at the rehearing before the ALJ. (*Id.* at 5.) Although the Memo does not contain any information regarding plaintiff's satisfaction with the outcome of this litigation, neither plaintiff nor defendant has opposed this motion.

## STANDARD OF REVIEW

The Social Security Act "allows courts to grant reasonable attorney's fees for successful representation in Social Security actions." *Fields v. Kijakazi*, 24 F.4th 845, 852 (2d Cir. 2022). Specifically, 42 U.S.C. § 406(b)(1)(A) provides, in relevant part:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment ….

.

"Section 406(b) does not prohibit contingent fee agreements." *Wells v. Sullivan*, 907 F.2d 367, 369 (2d Cir. 1990).  Indeed, the Supreme Court has acknowledged that "the marketplace for Social Security representation operates largely on a contingency fee basis," *Gisbrecht v. Barnhart*, 535 U.S. 789, 804 (2002), and that attorneys and clients "characteristically" enter into contingency-fee agreements "specifying that the fee will be 25 percent of any past-due benefits to which the claimant becomes entitled," *id.* at 803.  However, while § 406(b) allows contingency agreements, it "gives no guidance as to how a court should treat them in determining a 'reasonable fee.'" *Fields*, 24 F.4th at 852 (quoting *Wells*, 907 F.2d at 369).

The Second Circuit and the Supreme Court have filled that void by "set[ting] out guidelines for courts conducting this reasonableness analysis." *Id.* at 849.  Under these guidelines, courts "approach fee determinations by looking first to the contingent-fee agreement, then testing it for reasonableness." *Gisbrecht*, 535 U.S. at 808; *see Wells*, 907 F.2d at 371.  The Second Circuit has "rejected reliance on 'the traditional lodestar method'" in determining whether an amount is reasonable. *Fields*, 24 F.4th at 853 (quoting *Wells*, 907 F.2d at 371). "[B]ecause a successful social security claimant evaluates and pays his own attorney, … the best indicator of the "reasonableness" of a contingency fee in a social security case is the contingency percentage actually negotiated between the attorney and client, not an hourly rate determined under lodestar calculations." *Wells*, 907 F.2d at 371.  But a court "ought not blindly approve every fee request made pursuant to a contingent agreement." *Id.* at 372.

Both the Second Circuit and Supreme Court have listed several factors that a court should consider in evaluating the reasonableness of the contingent-fee agreement.  The Second Circuit

5

has "instructed courts to 'determine whether the contingency percentage is within the 25% cap'

and then to consider 'whether there has been fraud or overreaching in making the agreement,

and' … 'whether the requested amount is so large as to be a windfall to the attorney.'" *Fields*,

24 F.4th at 853 (quoting *Wells*, 907 F.2d at 372).  In *Gisbrecht*, the Supreme Court provided

examples of factors a court might consider in conducting this reasonableness analysis:

> First, the [Supreme] Court pointed to the character of the
> representation and the results the representative achieved, noting
> that courts may reduce the requested fees where the representation
> is substandard.  Second, the Court indicated that a reduction is
> appropriate where the attorney is responsible for delay, lest the
> attorney profit from the accumulation of benefits during a delay
> that the attorney caused.  And third, a reduction may be in order if
> the benefits are large in comparison to the amount of time counsel
> spent on the case – the so-called 'windfall' factor ….

*Fields*, 24 F.4th at 853 (internal quotations and citations omitted).

## DISCUSSION

In this case, most of the factors do not require lengthy discussion.  First, the contingency

fee specified in the Retainer Agreement between plaintiff and Pierre Law does not exceed 25%

of the past-due benefits.  Second, there is no evidence of fraud or overreaching in the making of

the agreement.  As the Supreme Court has noted, attorneys and clients "characteristically" enter

into contingent-fee agreements "specifying that the fee will be 25 percent of any past-due

benefits to which the claimant becomes entitled."  *Gisbrecht*, 535 U.S. at 803.  Although

*Gisbrecht* was decided in 2002, there is nothing to suggest that this has changed over the past 20

years.

Third, Pierre Law's representation was not substandard and ultimately achieved the

results plaintiff wanted.  Plaintiff, who filed his Social Security claim in October 2015, had no

success prior to retaining Pierre Law in mid-September 2019.  The law firm promptly convinced

defendant to stipulate to remand this matter for further administrative proceedings.  Pierre Law then represented plaintiff on remand, ultimately persuading an ALJ that plaintiff was disabled as he claimed.  As a result, plaintiff was awarded over $75,000 in past-due benefits and will continue to receive disability insurance benefits until at least 2027.

Fourth, there is no evidence of inordinate delay before this Court.  Pierre Law commenced this action less than one week after plaintiff signed the Retainer Agreement.  The firm never asked for an extension of the Court's scheduling order and served its Rule 12(c) motion about two months after being served with the administrative record.  Less than two months after the motion was served and slightly more than seven months after the action was commenced, defendant stipulated to remand this matter.

The "Windfall" Factor

The so-called "windfall factor" requires a lengthier discussion.  "In determining whether there is a windfall that renders a § 406(b) fee in a particular case unreasonable, courts must consider more than the de facto hourly rate." *Fields*, 24 F.4th at 854.  The Second Circuit has identified four "factors to be considered" in making this determination.  First, courts should consider "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do." *Id.*  Second, "courts should consider the nature and length of the professional relationship with the claimant – including any representation at the agency level." *Id.* at 855.  Although § 406(b) fees compensate counsel only for court-related work, "consideration of 'the time spent and work performed by counsel on the case when it was pending at the agency level' can inform a district court's understanding of 'the overall complexity of the case, the lawyering skills necessary to handle it effectively, the risks involved,

and the significance of the result achieved in district court.'" *Id.* (quoting *Mudd v. Barnhart*, 418 F.3d 424, 428 (4th Cir. 2005)).

"A third factor to consider is the satisfaction of the disabled claimant." *Id.* "Finally, a fourth important factor to consider is how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Id.* at 855. Since contingent-fee agreements make "payment for an attorney in a social security case … uncertain, … any reasonable fee award must take account of that risk." *Id.* at 855–56 (quoting *Wells*, 907 F.2d at 371).

After reviewing these factors, the Court is satisfied that the $18,760.50 requested by plaintiff would not constitute a windfall to Pierre Law. First, as one might expect given Mr. Pierre's over 20 years of experience specializing in Social Security cases, Pierre Law was particularly efficient in this case. Despite the 719-page administrative record, the firm's attorneys spent only 29.6 hours on this case, and prepared the motion for judgment on the pleadings in only 25.75 hours.

Second, Pierre Law not only represented plaintiff for about seven months before this Court, but continued to represent him on remand. The subsequent administrative proceedings lasted more than two more years before culminating in July 2022 with a favorable ALJ's decision. This lengthy history suggests that the litigation was complex, requiring considerable skill to handle it successfully.

With respect to the third factor, the Memo does not expressly state that plaintiff was satisfied with Pierre Law's efforts and the motion papers do not include an affidavit from plaintiff to that effect. However, it is beyond dispute that, thanks in part of Pierre Law's efforts,

plaintiff ultimately received the disability insurance benefits he sought.  This is a result that should satisfy most reasonable clients.

Finally, the Court notes that when plaintiff retained Pierre Law, success in this case was uncertain.  By September 2019, plaintiff had been litigating his disability claim for almost four years at the agency level without success.  After the Court remanded this matter for further administrative proceedings, it took Pierre Law more than two years to convince an ALJ that plaintiff was, in fact, disabled.  These facts suggest that there was a substantial risk that the litigation might prove unsuccessful.

Although the $18,760.50 fee sought by plaintiff amounts to almost $634 for each of the 29.6 hours that Pierre Law's attorneys spent on this action, that fee is nonetheless reasonable in the context of this case.  As noted above, there was a substantial risk that Pierre Law might be unsuccessful and receive no compensation for its efforts.  The $634 hourly fee, which might be considered high if awarded in a non-contingency case, was reasonable compensation in light of that risk.  *See Fields*, 24 F.4th at 854 ("even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case.")  Indeed, Mr. Pierre usually charges almost that much – $500 per hour – in non-contingency cases.

Furthermore, it is well established that an attorney who receives fee awards under both the EAJA and § 406(b) for the same work must "refun[d] to the claimant the amount of the smaller fee."  *Ward v. Kijakazi*, 20-CV-5412 (PGG)(JLC), 2023 WL 329210, at *2 (S.D.N.Y. Jan. 20, 2023) (quoting *Gisbrecht*, 535 U.S. at 796.)  In its Memo, Pierre Law acknowledges that it must refund to plaintiff the EAJA fees that it was awarded previously.  Since Pierre Law represents that it received $4,382.08, this refund effectively reduces the amount plaintiff will pay for Pierre Law's successful representation to $14,378.42.  That amounts to about $485.75 per

hour for each of the 29.6 hours spent on this litigation, which is less than Mr. Pierre's non-contingent billing rate of $500 per hour.

## CONCLUSION

For the reasons set forth above, the Court concludes that the $18,760.50 requested is reasonable and grants plaintiff's motion to award that amount in attorney's fees pursuant to 42 U.S.C. § 406(b).  The SSA shall pay that amount directly to Pierre Law, which shall promptly refund to plaintiff the EAJA fees awarded to the firm in July 2020.

SO ORDERED.

Dated:  Brooklyn, New York
        March 30, 2023

/s/ *Roslynn R. Mauskopf*
ROSLYNN R. MAUSKOPF
United States District Judge

10